**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term
Grand Jury Sworn in on November 16, 2009**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. _____** |
| | : | |
| Plaintiff, | : | **GRAND JURY ORIGINAL** |
| | : | |
| | : | **UNDER SEAL** |
| | : | |
| | : | **VIOLATIONS:** |
| | : | |
| | : | **18 U.S.C. § 371 (Count 1);** |
| v. | : | **Conspiracy to Violate the Foreign** |
| | : | **Corrupt Practices Act** |
| | : | |
| | : | **15 U.S.C. § 78dd-2 (Counts 2-3);** |
| **DANIEL ALVIREZ and** | : | **Foreign Corrupt Practices Act Violations** |
| **LEE ALLEN TOLLESON,** | : | |
| | : | **18 U.S.C. § 1956(h) (Count 4);** |
| Defendants. | : | **Conspiracy to Commit Money** |
| | : | **Laundering** |
| | : | |
| | : | **18 U.S.C. § 2;** |
| | : | **Aiding and Abetting and** |
| | : | **Causing an Act to be Done** |
| | : | |
| | : | **18 U.S.C. § 982;** |
| | : | **Forfeiture** |
| _____ | : | |

**INDICTMENT**

The Grand Jury charges that at all times material to this Indictment:

**INTRODUCTION**

1.  The Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§ 78dd-1, *et seq*. ("FCPA"), prohibited certain classes of persons and entities from making payments to foreign government officials to assist in obtaining or retaining business. Specifically, the FCPA prohibited the willful use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of money or anything of value to any person, while knowing that all or a portion of such money or thing of value would be offered, given or promised, directly or indirectly, to a foreign official for the purpose of assisting in the obtaining or retaining of business.

2.  DANIEL ALVIREZ ("ALVIREZ") was a citizen of the United States and, as such, was a "domestic concern" as that term was defined in the FCPA. 15 U.S.C. § 78dd-2(h)(1). ALVIREZ was the President of Company A, an Arkansas company based in Bull Shoals, Arkansas, that manufactured and sold law enforcement and military equipment. As a company that maintained its principal place of business in the United States, and that was organized under the laws of a state of the United States, Company A was a "domestic concern" as that term was defined in the FCPA. 15 U.S.C. § 78dd-2(h)(1).

3.  LEE ALLEN TOLLESON ("TOLLESON") was a citizen of the United States and, as such, was a "domestic concern" as that term was defined in the FCPA. 15 U.S.C. § 78dd-2(h)(1). TOLLESON was the Director of Acquisitions and Logistics for Company A.

4. Individual 1 was the former Vice President of International Sales for a company that manufactured and supplied law enforcement and military equipment to law enforcement and military customers around the world and was a business associate of ALVIREZ and TOLLESON.

5. Undercover Agent 1 ("UA-1") was an undercover Special Agent with the Federal Bureau of Investigation ("FBI") posing as a representative of the Minister of Defense of a country in Africa ("Country A").

6. Undercover Agent 2 ("UA-2") was an undercover Special Agent with the FBI posing as a procurement officer for Country A's Ministry of Defense who purportedly reported directly to the Minister of Defense.

## COUNT 1
**(Conspiracy to Violate the Foreign Corrupt Practices Act)**

7.  Paragraphs 1 through 6 of the Indictment are realleged and incorporated by reference as if fully set forth herein.

8.  From in or about May 2009, through in or about December 2009, in the District of Columbia, and elsewhere, the defendants,

DANIEL ALVIREZ and LEE ALLEN TOLLESON,

and others known and unknown to the Grand Jury, did unlawfully, willfully, and knowingly conspire, confederate and agree together and with each other and others to commit offenses against the United States, that is, to willfully use the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and the authorization of the payment of any money, and offer, give, promise to give, and authorizing of the giving of anything of value to any foreign official and any person, while knowing that a portion of such money or thing of value will be offered, given, promised, directly or indirectly, to any foreign official for the purposes of: (i) influencing the acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duties of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities thereof, in order to assist ALVIREZ, TOLLESON, Company A, and their conspirators in obtaining and retaining business, in violation of the FCPA, Title 15, United States Code, Section 78dd-2(a).

Object of the Conspiracy

9.     The object of the conspiracy was for DANIEL ALVIREZ, LEE ALLEN TOLLESON, and their conspirators to unlawfully enrich themselves by making corrupt payments and attempting to make corrupt payments to foreign officials for the purpose of obtaining and retaining lucrative business opportunities.

Manner and Means of the Conspiracy

10.    The manner and means by which DANIEL ALVIREZ, LEE ALLEN TOLLESON, and their conspirators accomplished the object of the conspiracy included, but were not limited to, the following:

a.     ALVIREZ and TOLLESON would participate in meetings and have discussions in which Individual 1 said that a friend of his, who was a self-employed sales agent, was tasked by Country A's Minister of Defense with obtaining various defense articles for outfitting Country A's Presidential Guard and that Individual 1 was brokering the deal. In reality, the self-employed sales agent was UA-1.

b.     ALVIREZ and TOLLESON would obtain and attempt to obtain business for Company A and themselves by making corrupt payments to UA-1 for the stated purpose of UA-1 "consulting" on a sale by Company A to the Ministry of Defense of Country A.

c.     ALVIREZ and TOLLESON would agree to pay UA-1 a 20% "commission" in connection with two contracts to sell grenades and grenade launchers to the Ministry of Defense of Country A, knowing that half of the "commission" was intended to be paid as a bribe to the Minister of Defense of Country A and half was intended to be split between Individual 1 and UA-1 as a fee for their corrupt services.

    d. ALVIREZ and TOLLESON would agree to inflate by 20% the true price of the grenades and grenade launchers Company A would sell to the Ministry of Defense of Country A for the purpose of concealing the 20% "commission" being paid to UA-1.

    e. ALVIREZ and TOLLESON would agree to create two price quotations, with one quotation representing the true cost of the grenades and grenade launchers and the second, inflated quotation representing the true cost of the grenades and grenade launchers plus the 20% "commission."

    f. ALVIREZ and TOLLESON would pay a "commission" into UA-1's bank account in the United States in connection with a "test sale" of goods to the Ministry of Defense of Country A ("Phase One"), knowing that half of the "commission" was intended to be paid outside the United States as a bribe to the Minister of Defense of Country A, for the purposes of obtaining the test sale contract and winning a second, larger contract to supply additional goods to the Ministry of Defense of Country A ("Phase Two").

    g. ALVIREZ and TOLLESON would agree to pay a "commission" to UA-1 in the United States in connection with the Phase Two contract, knowing that approximately half of the "commission" was intended to be paid outside the United States as a bribe to the Minister of Defense of Country A, for the purpose of obtaining the second contract.

Overt Acts

11.     Within the District of Columbia, and elsewhere, in furtherance of the above described conspiracy and in order to carry out the object thereof, DANIEL ALVIREZ, LEE ALLEN TOLLESON, and others known and unknown to the Grand Jury, committed the following overt acts, among others:

   a.     On or about May 13, 2009, ALVIREZ and TOLLESON met with Individual 1 and UA-1 at the Mandarin Oriental Hotel in Miami, Florida.  At that meeting, Individual 1 and UA-1 explained that the Country A Presidential Guard "deal" would be worth a total of approximately $15 million, would involve several suppliers, and would proceed in two phases: Phase One would involve a "test sale" of defense articles for Country A's Presidential Guard, and Phase Two would involve the sale of a larger quantity of those articles to outfit the rest of the Presidential Guard.

   b.     On or about May 13, 2009, at the Mandarin Oriental meeting in Miami, ALVIREZ and TOLLESON agreed to proceed with the Country A deal, after being told that in order to win the Country A business, Company A would need to add a 20% "commission" to the invoices it sent to UA-1 in connection with the Phase One and Phase Two deals, half of which would be paid to Country A's Minister of Defense and half of which would be kicked back in the form of a commission split between Individual 1 and UA-1 as a fee for their corrupt services.

   c.     On or about May 13, 2009, TOLLESON sent an email to UA-1, Individual 1, and ALVIREZ attaching a price quotation in connection with Phase One that contained the true sales price for the 25 grenade launchers ALVIREZ and TOLLESON agreed to sell through Company A.

  d. On or about May 13, 2009, TOLLESON sent an email to UA-1, Individual 1, and ALVIREZ attaching a price quotation in connection with Phase Two that contained the true sales price for the 70,000 grenades ALVIREZ and TOLLESON agreed to sell through Company A.

  e. On or about May 18, 2009, ALVIREZ sent an email to Individual 1 and TOLLESON attaching a second price quotation in connection with Phase One that contained an inflated sales price for the 25 grenade launchers that included the true sales price plus the 20% "commission" that would be used to pay and facilitate the bribe to Country A's Minister of Defense.

  f. On or about June 17, 2009, ALVIREZ and TOLLESON caused to be sent a wire transfer in the amount of approximately $16,231 from a bank account purported to be controlled by Country A to an Company A bank account for the purpose of funding the purchase of the grenade launchers sold by Company A to Country A's Ministry of Defense for Phase One of the scheme.

  g. On or about June 19, 2009, ALVIREZ and TOLLESON caused to be sent a wire transfer of the 20% "commission" to UA-1's bank account for the purpose of making the corrupt payment to Country A's Minister of Defense and paying the commissions to Individual 1 and UA-1 for facilitating the corrupt scheme.

  h. On or about August 21, 2009, ALVIREZ called Individual 1 on the telephone and stated that the grenade launchers Company A sold in connection with Phase One had been shipped to a storage facility in Virginia, for the purpose of having those goods forwarded to Country A.


    i.  On or about September 11, 2009, ALVIREZ sent an email to Individual 1 and TOLLESON attaching a price quotation in connection with Phase Two that contained an inflated sales price for the 70,000 grenades that included the true sales price plus the 20% "commission" that would be used to pay and facilitate the bribe to Country A's Minister of Defense.

    j.  On or about October 5, 2009, ALVIREZ and TOLLESON met with Individual 1 and UA-2 at Clyde's, a restaurant in Washington, D.C.  At that meeting, UA-2 told ALVIREZ and TOLLESON that the Minister of Defense was pleased with the grenade launchers sent in Phase One and with the "commission" the Minister of Defense had received.  UA-2 also told ALVIREZ and TOLLESON that the Minister of Defense had given his approval to proceed with Phase Two.  ALVIREZ then accepted two copies of the corrupt purchase agreement for Phase Two from Individual 1.

    k.  On or about October 23, 2009, ALVIREZ and TOLLESON caused to be sent by U.S. mail from Bull Shoals, Arkansas, to Washington, D.C., two original copies of the corrupt purchase agreement, which had been executed by ALVIREZ.

**(Conspiracy to Violate the Foreign Corrupt Practices Act, in violation of Title 18, United States Code, Section 371)**

## COUNTS 2 - 3
### (Foreign Corrupt Practices Act Violations)

12. Paragraphs 1 through 6 and 9 through 11 of the Indictment are realleged and incorporated by reference as if set out in full herein.

13. On or about the dates set forth below, in the District of Columbia, and elsewhere, the defendants,

DANIEL ALVIREZ and LEE ALLEN TOLLESON,

and others known and unknown to the Grand Jury, willfully made use of, and aided, abetted, and caused others to make use of, the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and the authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of anything of value to any person, while knowing that all or a portion of such money or thing of value would be offered, given or promised, directly or indirectly, to a foreign official for the purposes of:  (i) influencing the acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duties of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities thereof, in order to assist ALVIREZ, TOLLESON, Company A, and their conspirators in obtaining and retaining business in violation of the FCPA as follows:

| Count | On or About Date | Means and Instrumentalities of Interstate Commerce |
|:---:|:---:|---|
| 2 | 10/5/2009 | Travel from outside Washington, D.C., to Washington, D.C., for the purpose of meeting with Individual 1 and UA-2 at Clyde's to discuss the corrupt Country A deal |
| 3 | 10/23/2009 | U.S. mail from Bull Shoals, Arkansas, to Washington, D.C., containing two original copies of the corrupt purchase agreement for Phase Two |

**(Foreign Corrupt Practices Act Violation and Aiding and Abetting and Causing an Act to be Done, in violation of Title 15, United States Code, Section 78dd-2(a), and Title 18, United States Code, Section 2)**

## COUNT 4
### (Conspiracy to Commit Money Laundering)

14. Paragraphs 1 through 6 and 9 through 11 of the Indictment are realleged and incorporated by reference as if set out in full herein.

15. From in or about May 2009, through in or about December 2009, in the District of Columbia, and elsewhere, defendants,

DANIEL ALVIREZ and LEE ALLEN TOLLESON,

and others known and unknown to the Grand Jury, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18 United States Code, Sections 1956 and 1957 as follows:

   a. to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

   b. to conduct and attempt to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(A); and

   c. to knowingly engage in a monetary transaction by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity referred to above is a violation of the FCPA, Title 15, United States Code, Section 78dd-2(a).

**(Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956(h))**

## FORFEITURE

16. The violations alleged in Counts 1-4 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981 and 982(a)(1), and Title 28, United States Code, Section 2461(c).

17. As a result of the FCPA offenses alleged in Counts 1-3 of this Indictment (the "FCPA offenses"), DANIEL ALVIREZ and LEE ALLEN TOLLESON, shall, upon conviction of such offenses, forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to the FCPA offenses, wherever located, and in whatever name held, including, but not limited to a sum of money equal to the amount of proceeds obtained as a result of the FCPA offenses, in violation of Title 15, United States Code, Sections 78dd-2(a), and Title 18, United States Code, Section 371.  By virtue of the offenses charged in Counts 1-3 of the Indictment, any and all interest that the defendants have in the property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981, in conjunction with Title 28, United States Code, Section 2461(c).

18. As a result of the money laundering offense alleged in Count 4 of this Indictment, ALVIREZ and TOLLESON shall forfeit to the United States any property, real or personal, involved in, or traceable to such property involved in money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, including but not limited to the sum of

money equal to the total amount of property involved in, or traceable to property involved in those violations. By virtue of the commission of the felony offense charged in Count 4 of this Indictment, any and all interest that the defendants have in the property involved in, or traceable to property involved in money laundering is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

19. In the event that any property described above as being subject to forfeiture, as a result of any act or omission by the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to seek forfeiture of any other property of the defendants up to the value of the above described property in paragraph 19(a)-(e).

**(Forfeiture, Title 18, United States Code, Sections 981 and 982(a)(1), and Title 28, United States Code, Section 2461(c))**

A TRUE BILL

FOREPERSON

_____/s/_____
STEVEN A. TYRRELL
Chief
Fraud Section, Criminal Division


_____/s/_____
HANK BOND WALTHER
Assistant Chief
LAURA N. PERKINS
Trial Attorney




_____/s/_____
CHANNING D. PHILLIPS
Acting United States Attorney
In and For the District of Columbia


_____/s/_____
MATTHEW C. SOLOMON
Assistant United States Attorney